IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

**BRENNA FERRELL and**
**CHARLES FERRELL**                                                    **PLAINTIFFS**


**v.**                        **CASE NO. 3:24-CV-03038-DCF**


**DAVID NIXON,** *et al.*                                              **DEFENDANTS**


## OPINION AND ORDER

Before the Court is Defendants' Motion for Summary Judgment.  (Doc. 33).

For the reasons set forth below, Defendants' Motion is GRANTED.

### I.      BACKGROUND

This case was filed in the Harrison Division of the Western District of

Arkansas on September 11, 2024, for alleged violations of 24 U.S.C. § 1983.  (Doc.

1).  Plaintiffs Brenna and Charles Ferrell accuse Separate Defendants David Nixon,

David Hotchkiss, John Ainsworth, Dustin Sanders, and the City of Bull Shoals of

Malicious Prosecution; Unlawful Seizure; First Amendment Retaliation; and

violations of Due Process (Fabrication of Evidence) and Equal Protection (Class-of-

One).  (Doc. 51).  They also allege Municipal Liability for the following violations

of Arkansas state law: Malicious Prosecution; Abuse of Process; Defamation;

Intentional Infliction of Emotional Distress (Outrage); and Tortious Interference

with Business Expectancy.  (*Id.*).  This case was reassigned to the undersigned on

1

February 18, 2026.  (Doc. 40).  It is set for a jury trial in Fort Smith on August 17, 2026.  (Doc. 56).

Plaintiffs are citizens and residents of Marion County, Arkansas.  (Doc. 20, p. 1).  Separate Defendants are current and former police officers and municipal officials in the city of Bull Shoals, Arkansas.  (Doc. 1).  Plaintiffs moved to Bull Shoals and opened a business in January 2020. (Doc. 20, p. 2).  In 2021, Plaintiffs entered a business relationship with Nick Knopic.  (Doc. 51, p. 4).  As more property management roles were given to them, the Ferrells allege that Hotchkiss saw them as a threat to his business relationship with Knopic.  (Doc. 20, p. 3).  Hotchkiss denies this and asserts that he terminated the business relationship with Knopic because he did not want to run a business with Charles Ferrell, a convicted felon.  (Doc. 18, p. 3).

When Brenna Ferrell ran for office in 2022, her opponent accused her of being a criminal.  (Doc. 20, p. 4).  Brenna asserts that this opponent was a family member of Hotchkiss, which he denies.  (*Id.*; Doc. 18, p. 2).  Hotchkiss argues that whatever was said against Brenna was allowable free speech.  (Doc. 18, p. 2).

The Ferrells allege that Hotchkiss and his allies in city government interfered in their business dealings.  (Doc. 20, pp. 3-4).  Hotchkiss' allies allegedly include Bull Shoals' police department, city council, and mayor.  (*Id.*).  In 2022, Knopic

allegedly hired the Ferrells to replace Hotchkiss as property managers.  (*Id.* at 4-5).

They state that all Defendants were aware of this transfer of management.  (*Id.* at 5).

The events giving rise to this suit occurred late at night on August 15, 2022,

when former tenants broke into a building owned by Knopic.  (Doc. 18, p. 1).  The

Ferrells called the police and brought a gun with them to the property.  (Doc. 20, p.

5).  Officer Sanders and Police Chief Ainsworth responded to the scene and spoke

with both Knopic and Hotchkiss over the phone to determine whether the former

tenants were allowed to be on the property.  (Doc. 18, pp. 1-2).  Both Knopic and

Hotchkiss told the officers that Hotchkiss was the property manager and that the

former tenants were legally present on the property.  (*Id.* at 2).  Based on testimony

from the former tenants and a video consistent with that testimony, Sanders wrote

an affidavit stating that the Ferrells pointed a gun at the former tenants.  (Doc. 35,

pp. 2-3).  The Ferrells argue that the statements in Sanders' affidavit were knowingly

false, that Ainsworth knew they were false, and that Nixon and Hotchkiss were part

of this scheme.  (Doc. 20, p. 14-15).

Based on this alleged false affidavit, Brenna was arrested, booked in jail, and

had to pay for bail and an attorney.  (*Id.* at 7).  The arrest allegedly damaged Brenna's

reputation, despite being acquitted.  (*Id.*).  The Ferrells allege that all Defendants

conspired with each other to drive the Ferrells out of town, shut down their business,

take over the Village Mall, and restore Hotchkiss as property manager of Knopic's

properties. (*Id.* at 7-8).  Defendants allegedly violated the Ferrells' constitutional rights and committed these torts in furtherance of this scheme.  (*Id.*).

Defendants Nixon, Ainsworth, and Sanders deny all allegations of wrongful conduct and contend that their actions were reasonable and justified under the circumstances.  (Doc. 18, p. 2). They assert qualified immunity as well as statutory immunity under Ark. Code Ann. § 21-9-301.  (Doc. 26, pp. 11-12).

On January 28, 2026, Defendants filed the instant motion. (Doc. 33).  They deny that Plaintiffs' rights were violated, deny any allegation of wrongdoing, and assert that there are no genuine issues of material facts to back up any claims that would survive a Rule 56 Summary Judgment Motion. (*Id.* at 2).  Plaintiffs responded on February 24, 2026, (Doc. 41), and Defendants replied on March 2, 2026 (Doc. 48).  Being fully briefed, the motion is now ready for decision.

## II.   LAW

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A principal purpose of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp v. Catrett*, 477 U.S. 317, 323-24 (1986).  The Court must view the record in the light most favorable to the nonmoving party and make all reasonable inferences in his or her favor.  *See Schmidt v. Des Moines Pub. Sch.*, 655

F.3d 811, 819 (8th Cir. 2011).  If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine dispute exists concerning an issue of material facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Material facts are those "that might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Id.* at 247-248.  Rather, "there must be evidence on which [a] jury could reasonably find for the [non-moving party]." *Id.* at 252.

"A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party." *Amini v. City of Minneapolis*, 643 F.3d 799, 807 (8th Cir. 2011) (citing *Anderson*, 477 U.S. at 252.) "[U]nsupported, self-serving allegations and denials are insufficient to create a genuine issue of material fact." *Anuforo v. Comm'r.*, 614 F.3d 799, 807 (8th Cir. 2010). "[T]he nonmoving party must substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy" in order to survive summary judgment. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011) (quoting *Putman v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003)).

## III.   DISCUSSION

Plaintiffs' unsupported allegations are insufficient to survive summary judgment in this case.  Defendants argue that Plaintiffs cannot substantiate their allegations with sufficient probative evidence to create a genuine issue of material fact.  The Court agrees.  Plaintiffs' claims turn on three questions: 1) whether probable cause supported the arrest of Brenna Ferrell; 2) whether qualified immunity shielded the city Defendants during the events surrounding the arrest; and 3) whether *Monell* liability attached to the Defendants' alleged constitutional violations.  The Court addresses each in turn.

### A. Brenna Ferrell's arrest was supported by probable cause.

"Probable cause exists if the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed . . . an offense." *Flynn v. Brown*, 395 F.3d 842, 844 (8th Cir. 2005) (internal citation omitted).  "[L]aw enforcement officers are entitled to rely on information supplied by the victim of a crime, absent some indication that the information is not reasonably trustworthy or reliable."  *Clay v. Conlee*, 815 F.2d 1164, 1168 (8th Cir. 1987).  Further, "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner[.]" *Saterdalen v. Spencer*, 725 F.3d 838, 841 (8th Cir. 2013) (citing *Messerschmidt v. Millender*, 565 U.S. 535, 546-47 (2012)).

To succeed on claims of malicious prosecution, First Amendment retaliation, and unlawful seizure, a plaintiff must show a lack of probable cause. *See Thompson v. Clark*, 596 U.S. 36, 43 (2022) (malicious prosecution requires a showing that "the suit or proceeding was instituted without any probable cause); *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017) (denying unlawful seizure claims when probable cause supported an arrest); *Galarnyk v. Fraser*, 687 F.3d 1070, 1076 (8th Cir. 2012) ("Lack of probable cause is a necessary element of a First Amendment retaliatory arrest claim."). We find that probable cause supported Brenna's arrest, which defeats Plaintiffs' claims of malicious prosecution, unlawful seizure, and First Amendment retaliation. We further find insufficient evidence to support Plaintiffs' claims of violations of Due Process and Equal Protection.

### 1. Malicious Prosecution

A claim for malicious prosecution requires a plaintiff to show the criminal charge "was unfounded, and that it was made without reasonable or probable cause, and that the defendant in making or instigating it was actuated by malice." *Nieves v. Bartlett,* 587 U.S. 391, 405 (2019) (quoting *Brown v. Selfridge*, 224 U.S. 189, 191 (1912)). It requires "the want of probable cause." *Id.* at 406.

Here, Officer Sanders based his affidavit on statements from the victims and video evidence that appeared to him to be consistent with those statements. While Plaintiffs argue that the cell phone video does not, in fact, show Brenna pointing a

7

firearm, we do not find support for their conclusion that differing perspectives of a video necessarily indicate that Officer Sanders intentionally lied in his affidavit. Even without the video, Officer Sanders' reliance on the victims' statements would have been sufficient to support a finding of probable cause by a neutral magistrate.

## 2. Unlawful Seizure

To establish unlawful seizure under § 1983, the court must identify the specific constitutional right allegedly violated, then judge the claim by reference to the specific constitutional standard which governs that right. *Graham v. Connor*, 490 U.S. 386, 393 (1989). Claims of false arrest are properly analyzed by the objective reasonableness standard of the Fourth Amendment rather than the requirements of due process. *Id*. Unlawful seizure claims have been denied by the Eighth Circuit when probable cause existed to make an arrest. *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). "A peace officer who arrests someone with probable cause is not liable for false arrest simply because the innocence of the suspect is later proved." *Pierson v. Ray,* 386 U.S. 547, 555 (1967).

At the state level, the Arkansas Civil Rights Act (ACRA) prohibits individuals acting under color of state law from depriving persons of their rights, privileges, or immunities secured by the Arkansas Constitution. Ark. Code Ann. § 16-123-105; *see West v. Adkins,* 487 U.S. 42 (1988). Arkansas courts look to decisions in § 1983 actions for guidance on this issue. *Island v. Buena Vista Resort,* 352 Ark. 548 (2003).

8

They have found that a lack of probable cause is not shown merely by acquittal. *Owens v. Shoe Tree of Fayetteville, Inc.* 480 S.W.2d 936, 938 (Ark. 1972).

Here, Brenna's acquittal does not convince the Court that the underlying arrest lacked probable cause.  At most, it might suggest that Hotchkiss knew he was not the property manager at the time of the incident.  However, there is nothing in the record to suggest that Sanders or Ainsworth were unreasonable in their belief that Hotchkiss was the property manager, especially when Hotchkiss and Knopic told them as much.  Plaintiffs may assert different conclusions from this evidence, but the Court is not convinced that probable cause did not exist such that an unlawful seizure claim might survive summary judgment.

### 3.  First Amendment Retaliation

To prevail on a First Amendment retaliation claim, the following elements must be present: 1) that a plaintiff engaged in a constitutionally protected activity; 2) that the defendant took adverse action against the plaintiff that would chill a person of ordinary firmness from continuing in the activity; and 3) that the adverse action was motivated in part by the plaintiff's exercise of her constitutional rights. *See Scheffler v. Molin*, 743 F.3d 619, 621 (8th Cir. 2014).  Civil conspiracy requires a finding of some other underlying constitutional violation by the defendant. *See Novotny v. Tripp Cnty.*, 664 F.3d 1173, 1180 (8th Cir. 2011).

9

Here, we find no evidence to support Plaintiffs' assertion that Defendants conspired to arrest Brenna in retaliation for her political candidacy. Brenna was arrested pursuant to a warrant based on probable cause and issued by a neutral magistrate. There is nothing in the record suggesting that Defendants committed any underlying wrongful act, constitutional or otherwise, with regard to the arrest. The Court also finds notable that Plaintiffs offered no rebuttal against the Defendants' argument on this issue. As such, this claim fails.

### 4. Due Process (Fabrication of Evidence) and Equal Protection (Class of One)

"[A] manufactured false evidence claim requires proof that investigators deliberately fabricated evidence in order to frame a criminal defendant." *Riddle v. Riepe*, 866 F.3d 943, 947-48 (8th Cir. 2017). It is not improper, and certainly not evidence of fabrication, for an officer to rely on hearsay to establish the facts to support an arrest or charge. *Id.* (citing *Carpenter v. Gage*, 686 F.3d 644, 649 (8th Cir. 2012)). "[W]ithout any evidence of fabrication, evidence of motive is insufficient to survive summary judgment." *Id.*

While Plaintiffs list this claim in their pretrial disclosures, they neither alleged it in their Amended Complaint nor offered it in response to the instant Motion. Regardless, the Court finds no evidence in the record to support this allegation

10

against Defendants.  Thus, to the extent Plaintiffs intended to assert this claim, the Court finds that it must fail.

"The threshold inquiry in the class-of-one equal protection claim is whether plaintiffs are similarly situation to others who allegedly received preferential treatment; absent such a threshold showing, the plaintiffs do not have a viable equal protection claim."  *ChemSol, LLC v. City of Sibley, Iowa*, 386 F.Supp.3d 1000, 1024 (N.D. Iowa 2019) (internal citations omitted).  Here, again, Plaintiffs have asserted this claim for the first time in their Pretrial Disclosures.  Nonetheless, there is nothing in the record to support the allegation, and, as such, this claim must fail.

### B. Defendants Nixon, Ainsworth, and Sanders have qualified immunity.

Qualified immunity "shields government officials from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Johnson v. Carroll*, 658 F.3d 819, 825 (8th Cir. 2011); *see Martin v. Hallum*, 374 S.W.3d 152, 159 (Ark. Ct. App. 2010).  The inquiry is two-step: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct. *Id.* "Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015).

11

Arkansas courts set out the purpose of qualified immunity as "to allow public officers to carry out their duties as they think right, rather than acting out of fear for their own personal fortunes." *Martin v. Hallum,* 374 S.W.3d 152, 158 (Ark. Ct. App. 2010) (quoting *Greiner v. City of Champlin,* 27 F.3d 1346 (8th Cir. 1994)). "Toward this end, police officers have qualified immunity from liability in their individual capacity unless they violate a clearly established right of which a reasonable person would know." *Id.* (quoting *Harlow v. Fitzgerald,* 457 U.S. 800 (1982)). "In interpreting our qualified-immunity statutes, we have traditionally been guided by the analysis adopted by the United States Supreme Court for qualified-immunity claims in federal civil-rights actions." *Graham v. Cawthorn*, 427 S.W.3d 34, 46 (Ark. 2013).

Here, the Court finds no evidence that Defendants violated a constitutional or statutory right when they executed the arrest warrant. We are not convinced by Plaintiffs' arguments on this issue, and we decline to agree with Plaintiffs that qualified immunity does not exist. The record shows reasonable conduct based on probable cause, which entitles Defendants to qualified immunity.

Upon receiving a call about a late night break-in, Sanders and Ainsworth responded to a conflict among individuals, the Ferrells and former tenants, all asserting their legitimate presence on the property. The Ferrells claimed to be the property managers and insisted that the former tenants were breaking in. Upon

speaking to the property owner, the officers learned that Hotchkiss, not the Ferrells, was the legal property manager, which was further confirmed by Hotchkiss himself.

It was reasonable for the officers to conclude, then, that the Ferrells were in the wrong and the former tenants were in the right. Thus, when the former tenants told the officers that Brenna Ferrell pointed a gun at them and showed a video that appeared to depict as much, the officers reasonably believed them. It was based on these events that the neutral magistrate found probable cause to support an arrest warrant for Brenna Ferrell. The Court finds no evidence that the city Defendants violated Plaintiffs' rights. As such, they are entitled to qualified immunity, and the state tort claims against them must fail.

**C. The city of Bull Shoals is not subject to municipal liability under § 1983.**

Municipal liability attaches if a plaintiff proves that a municipal policy or custom was the moving force behind the alleged constitutional violation. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978); *Handle v. City of Little Rock*, 772 F.Supp. 434, 437 (E.D. Ark. 1991). This Court finds no constitutional violation, which precludes Plaintiffs' claim against the city of Bull Shoals.

13

## IV.   CONCLUSION

For the foregoing reasons, the Court finds that Defendants have met their burden to prove the absence of a genuine dispute of material fact and that they are entitled to judgment as a matter of law in this case.  **IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (Doc. 33) is **GRANTED**, and, accordingly, this case is **DISMISSED WITH PREJUDICE**.

   **IT IS SO ORDERED** this 23rd day of July 2026.


/s/ David Clay Fowlkes
DAVID CLAY FOWLKES
UNITED STATES DISTRICT JUDGE